In the Matter of the Estate of BARTON SEWELL, Deceased.

Surrogate's Court, New York County, March 17, 1926.

Wills — construction — testator directed trustees to pay out of income of residuary estate " for the living expenses " of his son and family — if grandson reached twenty-five years of age, principal was to be paid to testator's son, if living — if dead, fund was to be divided and enough of principal to insure income of $5,000 annually paid to son's widow and balance paid to grandson — gift intended for joint support of son's family — widow entitled to reimbursement for maintenance of family — income earned by trust up to date of son's death is payable to his estate — difference between amount needed for support of family and amount earned by fund may be accumulated during grandson's minority.

A will which directs that testator's trustees pay from the income on the balance of the residuary estate to his son " for the living expenses of himself and his family " such portion of income as said trustees in their discretion deem advisable until testator's grandson attains the age of twenty-five years, at which time the principal thereof was to be paid to testator's son if living, but if dead, to be divided by the trustees and sufficient thereof paid to the son's widow to insure income of $5,000 annually and the balance of the principal fund to the grandson, must be construed as directing that such income be paid to the widow as head of the family for the support of herself and testator's grandson; the gift was intended for the joint support of the family of testator's son.

By reason of the fact that at the time of the death of testator's son his family was composed of his wife and a son, the decree should direct the payment to the son's widow of the amount computed by the trustees as necessary for the family's maintenance from the date of the death of testator's son, to reimburse her for her expenditures for the family maintenance.

The income which had accrued up to the death of testator's son is payable to his estate.

The difference between the amount fixed by the trustees for the support of the family and the amount earned by the trust fund may be accumulated lawfully during the minority of the infant grandson of testator; but beyond the date of his arriving at his majority it becomes a void accumulation, and any of the parties interested may apply at that time for direction as to the payment of such excess.

The widow is not now entitled to the securities representing $5,000 annually, which must be held until the termination of the trust.

ACCOUNTING proceeding involving construction of will.

*Paul M. Herzog,* for the executors and trustees.

*Rabenold & Scribner,* for Blanche M. Sewell.

*A. Parker Nevin,* for the executors of Julia T. Sewell, deceased.

*Edward D. Brown,* special guardian.

FOLEY, S. In this accounting proceeding a construction of paragraph 2 of the codicil to the testator's will is requested. That paragraph reads as follows:

" I hereby revoke paragraph (c) of section sixth of my will and in place of the said paragraph I substitute the following: From the income on the balance of the residuary estate, I direct my trustee *to pay to my son, Fred W. Sewell for the living expenses of himself and his family* such portion of the income as they in their discretion deem advisable and proper until my grandson Barton Sewell, Second, shall attain the age of twenty-five (25) years, or until his death should he die before attaining the age of twenty-five (25) years, and then to pay to my said son Fred W. Sewell the principal thereof. In the event that my said son Fred W. Sewell shall not be living at the time provided in this paragraph for the payment of the principal, then I direct that the said principal be divided by my trustees and a portion set aside and invested in securities yielding an income of Five thousand dollars ($5,000) per year, and the said securities delivered to the widow, if any, of my said son; and deliver the balance to my grandson Barton Sewell, Second, and his brothers and sisters, if any. And if Barton Sewell, Second, be not living and shall die intestate, and without issue, and there be no brothers and sisters living to deliver the same to my son William B. Sewell, or his children."

The testator's son Fred W. Sewell died on January 23, 1922, survived by his wife, Blanche, and their son, Barton Sewell, 2d, an infant now about twenty years of age. The infant has been and is now residing with his mother in the family household. The principal of the trust fund involved approximates $1,000,000. The question to be determined is: Who is entitled to the income earned by the trust from the date of the death of Fred W. Sewell to the termination of the trust, to wit, the date when Barton Sewell, 2d, attains the age of twenty-five years, or upon his death prior thereto?

I hold that by the use of the words " for the living expenses of himself and family " the testator intended that such income must be paid for the support of the widow and son of Fred Sewell. (*Haynes* v. *Sherman,* 117 N. Y. 433; *Oberndorf* v. *Farmers' Loan & Trust Co.,* 208 id. 367; *Ireland* v. *Ireland,* 84 id. 321; *Matter of Yard,* 116 Misc. 19.) The gift was intended for the joint support of Fred Sewell's family. The direction to pay the income for that purpose was not a personal benefit for the son of the testator, but payment was to be continued after his death until the date fixed for the termination of the trust. In *Haynes* v. *Sherman* (117 N. Y. 433, 436) there was a gift " to my wife Catharine M. Sherman, in trust, nevertheless, to have and to hold the same and use so much of the income and principal as she may deem necessary *for her support and the support of our children,* until our youngest child now living shall arrive at the age of twenty-one years." The Court of Appeals

held that the children would have an enforcible right if the wife died before the youngest child became of age to compel the application of the income to their support. The opinion states: " It cannot be well said that this trust was limited upon the life of the widow and to terminate at her death. It is doubtless true that the testator expected that his wife would live to the termination of the trust. But the trust was for the benefit of his children as well as his wife, and they have an interest in its execution. * * * The trust was not so far personal that it would disappear with the death of the widow." In *Oberndorf* v. *Farmers' Loan & Trust Co.* (208 N. Y. 367, 370) the conditions attached to the gift of income were almost similar to those contained in the will here. The income was to be paid " to my son, William D. Oberndorf, during the period of his natural life, *for the benefit of himself and his family.*" The wife brought an action in equity to have the will construed and to have it adjudged that the trustees pay to her annually the necessary expenses of her support, and particularly the amount fixed by a separation agreement entered into between herself and her husband, the life tenant. Judge Gray in his opinion pointed out that the word " family " included the wife of the life tenant. He further observed, " the words ' for the benefit of himself and his family ' are explanatory of a testamentary purpose, which a court of equity may enforce, upon it being made to appear that that purpose is nullified by the beneficiary's conduct. * * * . Oberndorf [the husband] was not solely interested in the trust estate; he was clothed with a power, in respect thereof, for the benefit of another, his wife, as well as of himself." (Citing *Ireland* v. *Ireland,* 84 N. Y. 321; *Haynes* v. *Sherman,* 117 id. 433.)

Incidentally, it should be stated that the Surrogate's Court possesses complete equitable jurisdiction in an accounting proceeding such as the pending matter. At the time of the death of Fred Sewell his family was composed of his wife and his son, Barton, and in accordance with the decisions cited, the amount of income fixed by the trustees must be paid to the widow as the head of the family. The trustees in their discretion by a written certificate filed in the proceeding, have fixed that amount at the sum of $35,000 per annum. The decree should direct the payment of such annual allowance from the date of death of the father, Fred Sewell, January 23, 1922, to reimburse the mother for her expenditures for the family maintenance. I hold further that the income which had accrued up to the death of Fred Sewell is payable to his estate. (*Bloodgood* v. *Lewis,* 209 N. Y. 95.) The difference between the amount fixed by the trustees for the support of the family and the amount earned by the trust fund may lawfully be accumulated

during the minority of the infant, Barton Sewell. Beyond the date of his arriving at his majority, it becomes a void accumulation. Any of the parties interested may apply at that time for a direction as to the payment of such excess. The objections contained in the report of the special guardian are overruled. It necessarily follows from the construction adopted by me that the securities yielding an income of $5,000 per annum cannot now be delivered to Blanche Sewell, the wife of Fred W. Sewell, but must be held by the trustees until the termination of the trust.

Submit decree on notice accordingly.